**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAYEED MIRZA and NASIM MIRZA<br><br>Plaintiffs,<br><br>v.<br><br><br><br>JACK MILLER and GREGORY MARSH, individually and d/b/a EQUITY FUNDING, GELT FINANCIAL, FAIRGATE PROPERTIES, PUBLIC SAVINGS BANK, et al.<br><br>Defendants. | Civil Action No. 11-2192 (PGS)<br><br><br><br>**MEMORANDUM & ORDER** |

      This matter is before the Court on a motion for summary judgment. By way of background, a motion for reconsideration was filed by attorneys for Defendants, Jack Miller, Equity Partners Fund, XLI, LLC (incorrectly named as "Equity Funding"), and Gelt Financial (collectively "Defendants"), for reconsideration of the Court's July 25, 2011 Order denying Defendants' motion to dismiss and allowing limited discovery on certain issues. On April 27, 2012, the Court converted the motion for reconsideration into a motion for summary judgment in light of the Affidavit of Patrick Hoffman, Esq. which was filed outside of the pleadings, and allowed the parties additional time to file supplemental pleadings.

I.  Factual Background and Procedural History

Plaintiffs, Sayeed Mirza and his wife, Nasim Mirza, filed the present complaint alleging violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, and seeking damages against the Defendants arising out of a failed 2009 real estate transaction in Kansas. On or about March 5, 2009, Mr. Mirza entered into an Installment Agreement with Gelt Financial and Equity Partners for the purchase of a former hospital building located in Ellsworth, Kansas at a purchase price of $180,000.00. Miller Aff. Ex. B, Ex. A. Jack Miller ("Miller") signed the 2009 Installment Agreement as President of Equity Partners. *Id.* The Installment Agreement superseded a prior contract for the sale of the hospital building dated December 1, 2008. Miller Aff. Ex. A. The 2008 Agreement provided that the property was to be sold "as is, no contingencies after the inspection." *Id.* at ¶ 5.

The 2009 Installment Agreement provided that the purchase price for the hospital building was to be paid in 23 equal monthly installments of $1,089.88, with the balance due on March 6, 2011. Miller Aff. Ex. B, Ex. A ¶ 1. In connection with the Installment Agreement, Mr. Mirza paid a total deposit of $27,000.00, which sum was held in escrow by Smoky Hill Title Co., located in Ellsworth, Kansas. The Installment Agreement provided that the "property is being sold in as is condition without any representations whatsoever." Miller Aff. Ex. B, Ex. A ¶ 14. In the event of default, the 2009 Installment Agreement provided that "all payments and improvements made by the Buyer shall be retained by the Seller as liquidated damages for such default." *Id.* at ¶ 10. The 2009 Installment Agreement also included a provision that Kansas law governed the Agreement. *Id.* at ¶ 29.

In May 2009, Mr. Mirza inspected the hospital and allegedly discovered extensive water damage, which Mr. Mirza asserts was not disclosed. Compl. ¶ 10. Thereafter, Mr. Mirza demanded that the title company return his deposit. *Id.* at ¶ 11. On or about May 7, 2009, Gelt Financial and Equity Partners commenced a lawsuit in the District Court of Ellsworth County, Kansas, Docket No. 09 CV 24, captioned *Equity Partners Fund XLI , LLC and Gelt Financial v. Sayeed Mirza*, to recover the deposit as liquidated damages based on Mr. Mirza's breach (the "Kansas Lawsuit"). *See* Miller Aff. Ex. B. On or about June 30, 2009, Mr. Mirza filed, *pro se*, an answer and a counterclaim in the Kansas Lawsuit. Miller Aff. Ex. D. In the counterclaim, Mr. Mirza sought the return of the $27,000 deposit as "damages from the Plaintiff for giving false information about the condition of the property." Miller Aff. Ex. D., counterclaim ¶ 1. The counterclaim alleged that "[o]ne of the Defendants [Mr. Mirza's business partner Ishrat Jafary] was pressured into signing the "Installment Agreement" and was falsely informed that the agreement was for mortgage purposes only . . The Defendants [Mr. Mirz and Mr. Jafary] consider the Installment agreement is not a valid sales contract and respectfully request that the Agreement for Sale [2008 Installment Agreement] . . . terms be applied and the [2009] Installment Agreement be considered void." *Id.* at "Cause of Action."

A pretrial hearing was scheduled in the Kansas Lawsuit for July 16, 2009. Miller Aff. Ex. F. However, Mr. Mirza alleges he was unable to attend the pretrial hearing because of health problems. Compl. ¶ 13. The Kansas court entered default judgment against Mr. Mirza the same day. Hoffman Aff. Ex. B. The Kansas Court specifically ordered that the $27,000 being held by the title company in escrow was to be transferred to Miller, Gelt Financial, and Equity Partners. *Id.* Mr. Mirza alleges that default was improperly entered in the Kansas Lawsuit because he requested an adjournment in that matter by way of a letter with a doctor's note sent via facsimile to the Kansas

judge prior to the hearing.  Compl. ¶ 13.

This Court's July 25, 2012 Order, which is the subject of the motion for reconsideration, denied Defendants' motion to dismiss as to Count One without prejudice, and ordered the parties to engage in limited discovery as to whether Mr. Mirza filed an adjournment request with the Kansas Court and whether the Kansas Court received and considered such request.

Following limited discovery, Defendants submitted the affidavit of Patrick Hoffman, Esq., an attorney admitted to practice in Kansas and represented the Defendants in the Kansas Lawsuit. Notably, Mr. Mirza did not conduct any discovery.  Mr. Hoffman's affidavit states that Judge Svaty (the Kansas court Judge) did receive and consider Mr. Mirza's written adjournment request, but denied the request because Mr. Mirza did not "directly" contact the judge for a continuance nor request a court appearance or conference pursuant to Kansas' Local Court Rule 104.  With regard to obtaining an adjournment, Rule 104 - Continuances, of the 20th Judicial District Local Court Rules states:

> Except in the case of necessity or emergency, continuances requested less than 48 hours before the scheduled hearing will not be granted. All continuances must be requested in writing. Continuances will not be granted without a court appearance or conference with all parties participating. It is the responsibility of the attorney requesting the continuance to serve notice on all opposing counsel and to obtain a hearing from the assigned judge.

According to Mr. Hoffman, in light of Mr. Mirza's non-appearance, Judge Svaty directed him to draft and submit a Journal Entry of Judgment Sanctions.  Judge Svaty then signed the draft Journal Entry on the same day.  The journal entry became a final judgment on July 16, 2009 once it was filed by the Court.  The Journal Entry states:

4

> 1.   Defendant was served with summons and petition personally as reflected in the Court's file.
>
> 2.   The defendant was sent Notice of Hearing.
>
> 3.   That the Defendant has not contacted the Judge before whom this hearing was scheduled requesting a continuance, or to make arrangements for appearance by phone, or for any other reasons.
>
> 4.   That the Defendant is not in the military service, an infant or incompetent.
>
> 5.   That K.S.A. 60-216(b) and through incorporation K.S.A. 60-237 states that a party who fails to make an appearance at a pretrial conference or fails to participate in good faith may be subject to sanctions, including attorneys's fees, an order striking out pleadings or parts thereof, or rendering a judgment against the disobedient party.
>
> 6.   That the defendant failed to make an appearance at the Pretrial hearing, and is subject to sanctions as a result.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:
>
> 1.   Plaintiff is entitled to judgment for the full amount requested in their original petition, in the amount of $27,000.
>
> 2.   Smoky Hill Title Company, as escrow agent in possession of the said $27,000 is ordered to make payment of such amount to the Plaintiffs.

According to Mr. Hoffman, Kansas law permits one year to seek relief from the final judgment on the grounds of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence or fraud.  *See*  K.S.A. 60-260(b) and (c).  Mr. Mirza never sought relief from the final judgment within that time period.  Instead, Mr. Mirza filed this action in New Jersey Superior Court in April 2011 (and removed to this Court) almost two years after entry of the Kansas judgment.

II.     Summary Judgment Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the

non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x. 222, 227 (3d Cir. 2007).

    III.    Discussion

        A.    Arguments

The Court will determine whether claim preclusion bars Mr. Mirza's claims because of the final judgment entered in the Kansas Lawsuit. The Court was primarily concerned about whether Mr. Mirza had a full and fair opportunity to litigate his claims in the Kansas Lawsuit.

Defendants argue that all of the requirements of claim preclusion have been met and Mr. Mirza should not be allowed to collaterally attack a judgment entered in a court of competent jurisdiction. Defendants argue that the default judgment entered against Mr. Mirza in Kansas was a final judgment on the merits. Defendants rely on Kansas law to argue that the judgment does not have to be correct to be final, and Mr. Mirza had one year to seek relief from the judgment, but he failed to do so. *City of Eudora v. French*, 461 P.2d 762, 768 (Kan. 1969); Kan. Stat. Ann. § 60-260(b)-(c). Defendants also argue that the prior judgment involved the same parties aside from Jack Miller who was not a party, but is in privity with Gelt Financial and Equity Partners as President of both entities and the signatory on the 2009 real estate contract. Finally, Defendants argue that this suit raises the same claims as Mr. Mirza's counterclaim in the Kansas Lawsuit, and involves the same real estate transaction at issue in the Kansas suit.

In opposition, Mr. Mirza contends that the Kansas court lacked personal jurisdiction over him to enter a judgment. Nonetheless, Mr. Mirza argues that his written adjournment request was not considered by the Kansas court before judgment was entered, and due to health problems he was

unable to travel to Kansas for the hearing. Mr. Mirza also contends that he was not properly notified of the Kansas judgment once it was entered.

Mr. Mirza opposes the motion for reconsideration on two grounds – 1) Mr. Hoffman's affidavit is false; and 2) res judicata does not apply in this case because the Kansas court did not consider the merits of his claims. Mr. Mirza argues that Hoffman's affidavit is false because the Journal Entry was signed within three hours of the scheduled pretrial hearing, and accordingly it was a "preplanned" strategy.

### B.   Res Judicata

The doctrine of res judicata has two aspects: claim preclusion and issue preclusion (collateral estoppel). The issue here is whether claim preclusion bars Mr. Mirza's claims against the Defendants in the suit filed here because of the Kansas judgment. Claim preclusion can be described as follows:

> [C]laim preclusion . . . treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action'." . . . Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial. Wright, et al., 18A Fed. Prac. & Proc. Juris § 4402 (2d ed.).

The Full Faith and Credit Statute under 28 U.S.C. § 1738 requires a federal court to give preclusive effect to a state court judgment as that judgment would be given in the court of the state where the judgment was entered. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). Thus, a court must look to the law of the state adjudicating the prior action. *Id.* Here, a Kansas state court entered a judgment against Mr. Mirza in July 2009, and therefore this Court will apply Kansas' preclusion law. *Id.*

In Kansas, claim preclusion applies when four conditions are met: (1) identity in the things sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity in the quality of the persons for or against whom the claim is made. *Estate of Reed v. Indiana Univ. Found.*, 693 P.2d 1156,1160-61 (Kan. 1985). Kansas explains res judicata, or claim preclusion, as follows:

> [t]he rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Stanfield v. Osborne Indus.*, 949 P.2d 602, 609 (Kan. 1997); *aff'd by Rhoten v. Dickson*, 223 P.3d 786 (Kan. 2010).[1]

A preliminary issue is whether default judgment qualifies as a final judgment on the merits. First, the "Journal Entry of Journal Sanctions" became a final judgment when it was filed with the Kansas Court on July 16, 2009. Kan. Stat. Ann. § 60-258. However, the Kansas court entered a default judgment against Mr. Mirza. Mr. Mirza filed an answer and counterclaim in the Kansas Lawsuit asserting the same fraud allegations that were raised here. According to the "Journal Entry of Judgment Sanctions," the Kansas Court subjected Mr. Mirza to sanctions by striking his answer and counterclaim upon his failure to appear at the pretrial hearing. *See* Kan. Stat. Ann. §§ 60-216(b), 60-237(b)(2). In Kansas, a default judgment is considered a final judgment on the merits. *City of Eudora v. French*, 461 P.2d 762 (Kan. 1969); *McLaughlin v. McGrew*, 234 P. 1002 (Kan. 1925).

Although Mr. Mirza contends that the Kansas Court lacked personal jurisdiction over him,

---

[1] The court in *Stanfield* applied federal preclusion law, but noted that "Kansas law does not appear to differ significantly from the federal law regarding the preclusion doctrines." *Stanfield*, 949 P.2d at 608.

the Kansas Long Arm Statute grants the Kansas Court with personal jurisdiction because Mr. Mirza entered into a contract for the purpose of "owning, using, or possessing real estate located in this state." Kan. Stat. Ann. § 60-308(c). No one disputes that the Kansas Court had subject matter jurisdiction to enter a judgment. Despite entry of final judgment, Mr. Mirza had one year to seek relief from the final judgment on the ground of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence or fraud. Kan. Stat. Ann. § 60-260(b)-(c). Mr. Mirza provides no explanation as to why he did not seek relief from the judgment in Kansas as permitted by statute.

The first element of Kansas res judicata requires a finding of similar relief in both actions. *Winkel v. Miller*, 205 P.3d 688, 697 (Kan. 2009). In the Kansas lawsuit, Gelt Financial and Equity Partners were seeking the release of the $27,000 deposit held in escrow as liquidated damages for the failed 2009 real estate transaction. In the present action, Mr. Mirza is seeking the return of this same deposit, plus interest and any other damages relating to the same 2009 real estate transaction. Since both actions are seeking the same relief- i.e. damages, including the $27,000 deposit, resulting from the failed 2009 Kansas real estate transaction- then the first element is satisfied.

The second element requires both suits to have similar causes of action. In Kansas, the courts have adopted the transactional approach whereby a cause of action includes all claims or legal theories of recovery that arise from the same transaction. *Stanfield*, 949 P.2d at 611-12. "Since claim preclusion only prohibits the relitigation of the same 'claim,' it is necessary to redefine the term 'claim' so as to include separate legal theories based on the same facts that could have been brought in the same action." *Id.* at 611. "A contract is generally considered to be a 'transaction' for claim preclusion purposes." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 832 (10th Cir. 2005). Applying the transaction approach, the two suits are based on the same failed 2009 real estate

contract, and the parties are in dispute over who is entitled to the $27,000 deposit. Mr. Mirza's counterclaim in the Kansas Lawsuit demanded the return of his $27,000 deposit as "damages from the Plaintiff for giving false information about the condition of the property." Miller Aff. Ex. D, Mirza Counterclaim ¶ 1. Here, Mr. Mirza is also seeking the return of his $27,000 deposit plus additional damages and cost of suit. The legal theory is also the same as Mr. Mirza asserts in both actions that he entered into the real estate contract based on false information about the property condition. Mr. Mirza makes the same argument in his complaint in this action that the "[d]efendant in this case committed unlawful practice provided [sic] false information not only about property condition, they gave false information about property real estate taxes and insurance. They admitted about some damage . . . but concealed about extensive water damage to the property." Compl. ¶ 15. Although Mr. Mirza's answer and counterclaim appear to have been stricken by the Kansas Court judge, these are claims that Mr. Mirza could have brought if he sought relief from the final judgment.

The third element requires a determination of whether the parties named in this action, but not named in the Kansas Lawsuit, are in privity with the parties from the prior action. A judgment binds not only parties to the action, but also those in privity with the parties. *O'Keefe v. Merrill Lynch & Co.*, 84 P.3d 613, 681 (Kan. Ct. App. 2004). A judgment may be binding on a non-party because of a pre-existing substantive legal relationship between the person to be bound and a party to the judgment. Restatement (Second) of Judgments §§ 43-61. The Restatement (Second) of Judgments has identified specific relationships between parties and non-parties to determine when privity exists between a party to the judgment and a non-party. One such relationship is a corporation and its officers, directors, stockholders, and members. Restatement (Second) of Judgments § 59. The Restatement provides that generally, a judgment in an action to which a

11

corporation is a party has no preclusive effect on a person who is an officer, director, stockholder, or member of a non-stock corporation. *Id.* However, there is an exception if the corporation is closely held, the Restatement provides

> (3) If the corporation is closely held, in that one or a few persons hold substantially the entire ownership in it, the judgment in an action by or against the corporation or the holder of ownership in it is conclusive upon the other of them as to issues determined therein as follows:
> (a) The judgment in an action by or against the corporation is conclusive upon the holder of its ownership if he actively participated in the action on behalf of the corporation, unless his interests and those of the corporation are so different that he should have opportunity to relitigate the issue. *Id.* at § 59(3)(a).

Similarly, the Kansas supreme court has also held that a judgment in favor of a corporation bars a subsequent action against the corporation's officers for damages arising out of the same transaction. *See Hardy v. Miller*, 289 P. 952 (Kan. 1930).

In the Kansas Lawsuit, the plaintiffs were Equity Partners Fund XLI, LLC and Gelt Financial versus Mr. Mirza as the defendant. In the present matter, the named defendants are Jack Miller and Gregory Marsh, individually and in their official capacity, Equity Partners Fund XLI, LLC (improperly pled as "Equity Funding"), Gelt Financial, Fairgate Properties, and Public Savings Bank.[2] However, Jack Miller was not a named party in the Kansas Lawsuit, but argues that he is in privity with Equity Partners and Gelt Financial as the President of both entities. Jack Miller

---

[2] The Defendants, Jack Miller, Equity Partners Fund, Gelt Financial and Public Savings Bank, filed motions to dismiss under Fed. R. Civ. P. 12(b)(6), and this Court entered an Order granting, *inter alia*, Public Savings Bank's motion to dismiss. To date, no appearance has been entered on behalf of Fairgate Properties or Gregory Marsh. The remaining defendants in the present matter, Jack Miller, Equity Partners, and Gelt Financial filed a motion for reconsideration, which the Court converted to a motion for summary judgment.

testified in an affidavit that he is the President of Gelt Financial Corporation, a Pennsylvania corporation, which upon the Court's review is a closely held company owned by Jack Miller.[3] Miller Aff. ¶ 1. Miller also testified that he is the President of Equity Partners Fund XLI, LLC, a Pennsylvania limited liability company where Gelt Financial Corp. is the sole member. *Id.* Additionally, Miller acknowledges that he personally signed the 2009 Installment Agreement as President of Equity Partners, and he also personally signed the prior 2008 real estate contract on behalf of Equity Partners, which was superseded by the 2009 Agreement. *Id.* at ¶¶ 4-5.

Applying *Hardy* and the Restatement to this matter, the Kansas judgment is also binding on Jack Miller for claim preclusion purposes. The judgment entered in Kansas was in favor of Gelt Financial and Equity Partners. Jack Miller was the primary owner of Gelt Financial, a closely held corporation, and Mr. Miller actively participated in the real estate transaction on behalf of both entities, and therefore the Kansas judgment is conclusive on Mr. Miller. Accordingly, Jack Miller is in privity with Gelt Financial and Equity Partners to satisfy the third element for claim preclusion.

The fourth element is satisfied when the plaintiffs and defendants were adverse parties in the prior action and in the subsequent action. *Pretz v. Lamont*, 626 P.2d 806, 809 (Kan. Ct. App. 1981). This element is clearly established as Mr. Mirza was adverse to Gelt Financial, Equity Partners, and Jack Miller (in privity) in both the prior and subsequent actions. Accordingly, all four requirements for claim preclusion under Kansas law are satisfied to bar Mr. Mirza's claims against the Defendants in this action.

---

[3] The Court conducted a corporation search through the Pennsylvania Department of State website to determine the corporation's status.

IV.     Conclusion

The Court has granted substantial deference to Mr. Mirza, as a *pro se*, when analyzing whether Mr. Mirza has a valid claim before this Court or if he is barred from bringing such claims because of res judicata. Initially, the Court was concerned about whether Mr. Mirza had a full and fair opportunity to litigate his claims in the Kansas Court. *See Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) (applying the full and fair opportunity to litigate as a requirement for res judicata). However, this Court is limited in its review of the Kansas Court judgment because of res judicata and this Court must give full faith and credit to a valid final judgment entered by the Kansas court on July 16, 2009. 28 U.S.C. § 1738. Accordingly, Mr. Mirza's claims against defendants, Jack Miller, Gelt Financial Corp. and Equity Partners Fund, are barred by claim preclusion under res judicata. Additionally, Mr. Mirza is not permitted leave to file an amended complaint in this matter since his new claims would also be barred by res judicata as they arise out of the same failed real estate action that was adjudicated in Kansas.

**ORDER**

**IT IS** on this 2ND day of August, 2012

**ORDERED** that Defendants' motion for reconsideration (ECF No. 32), converted by the Court into a motion for summary judgment, is hereby GRANTED; and it is further

**ORDERED** that Plaintiffs' claims against Defendants, Jack Miller, Gelt Financial Corp. and Equity Partners Fund, are dismissed with prejudice because of res judicata.

<i>s/Peter G. Sheridan</i><br>
PETER G. SHERIDAN, U.S.D.J.

August 2, 2012